[For subsequent proceedings in this litigation, see Case No. 11,394.]

## Case No. 11,394.

### In re PRESTON.

[6 N. B. R. (1873) 545.] [1]

#### District Court, Washington Territory.

BANKRUPTCY — COSTS IN ATTACHMENT — EXEMPTIONS—SETTING APART BY ASSIGNEE.

1. An attachment issued out of the state court is dissolved from the date of the filing of the petition where an order of adjudication is subsequently granted.

[Cited in brief in Goss v. Cardell, 53 Vt. 449.]

2. Costs that accrued under such attachment, prior to the filing of the petition in bankruptcy, are not a valid lien on the property unless incurred at defendant's request.

[Cited in Gardner v. Cook, Case No. 5,226; Re Hatje, Id. 6,215; Hatfield v. Moller, 4 Fed. 719.]

[Cited in Miller v. Mackenzie, 43 Md. 411.]

3. In setting apart for the use of the bankrupt exempt property, the assignee is not obliged to designate articles on which there is no lien.

[Cited in brief in Wooster v. Bullock, 52 Vt. 50.]

4. An assignee is chargeable personally with costs of the proceedings where he files a petition to have an attachment dissolved which covers property that has already been set apart by him as exempt.

In the matter of the petition of Geo. N. McConaha, assignee of the estate of C. H. Preston, bankrupt, praying that a sale made by Stretch, sheriff of Snohomish county, be set aside.

On a hearing before his honor, Judge Green, it was agreed by counsel that a statement of facts be prepared and submitted for his honor's decision, as a special case under the statute. The following statement of facts is herewith submitted and agreed to by the assignee and defendant's counsel:

First. That on the twentieth day of February, eighteen hundred and seventy-one, one-half interest in six work oxen was attached by Benjamin Stretch, sheriff of Snohomish county, in a suit brought by J. P. White, plaintiff, v. C. H. Preston, defendant. The one-half interest in said cattle was the property of the defendant in the suit. Preston and the defendant, Henry Mills, owned the other half interest. Second. That, on the

---

[1] [Reprinted by permission.]

fourth day of March, eighteen hundred and seventy-one, an order was made by the Hon. O. Jacobs, commanding the sale of said property by said sheriff (for the reason that the same was expensive to keep), and further ordered that the amount arising from said sale be deposited in the office of the clerk of the United States district court for the Third judicial district, viz., L. B. Andrews. Third. That said Stretch, in accordance with the provisions of said order, sold said property on the twentieth day of March, eighteen hundred and seventy-one, to Henry Mills, and deposited the money in the clerk's hands as directed. Fourth. That on the eighteenth day of March, eighteen hundred and seventy-one, said C. H. Preston filed his petition in bankruptcy against himself with the clerk of the supreme court, at Olympia, and on the twenty-fourth day of March, eighteen hundred and seventy-one, was adjudged as bankrupt. Fifth. That the transcript of the said petition of C. H. Preston was filed with the clerk of the Third judicial district, twenty-fourth day of March, eighteen hundred and seventy-one. Sixth. That, on the twentieth day of March, when said property was sold by said sheriff, Stretch, he had not had notice that said Preston had filed his petition in bankruptcy. Two hundred dollars was the amount realized from such sale, and was a fair price for the property sold. Seventh. The property in question has been set aside by the assignee, George N. McConaha, as exempt under the provisions of the bankrupt law.

Question 1st. Whether the filing of the bankrupt petition in the supreme court at Olympia, on the eighteenth March, dissolved the attachment and rendered null and void the sale and all proceedings subsequent at that date. or whether, under the whole circumstances of the case, the court will hold it valid. Question 2d. Whether or not the costs that accrued under the attachment. prior to the filing of bankrupt petition in the supreme court, are a valid lien upon the property in controversy, or upon the money arising from the sale thereof? If a valid lien, is it to be enforced in the bankrupt court? Or has the sheriff a right to retain the property or money until his costs are paid? Question 3d. Was the petition filed so as to work a dissolution of the attachment until the transcript was filed with the clerk of the district court and the fifty dollars paid as security for register's fees?

The judge is to pass upon the regularity of the proceedings in this matter thus far; if regular, then the costs to abide the final result, otherwise to be paid by plaintiff. No right of appeal is waived by either party.

G. N. McConaha, assignee.
McGilvra & Baxter, for defendants.
A. N. Merrick, for bankrupt.

GREEN, J. Under this special case, submitted to me on the twentieth day of June, eighteen hundred and seventy-one, it is assumed that the attachment proceedings were regular up to the time of the commencement of proceedings in bankruptcy; and that at the commencement of the latter proceedings the attachment suit had not proceeded to judgment.

I answer to the first question, that the attachment was dissolved from the date to which the assignment in bankruptcy relates —that is, from the time of the commencement of bankruptcy proceedings. The operation of the assignment in reference to the attachment was, not to avoid it ab initio, but to arrest all proceedings under it; to dissolve it as of the date of the filing of the petition in the supreme court; to leave untouched all previously accrued rights; to prevent the subsequent accrument of rights, under the attachment. From the date of the dissolution of the attachment the sheriff or other person having then actual possession of the attached property became divested of all official relation to that property, and became a simple bailee thereof to the use of the person by virtue of the bankrupt act entitled to the same. If he afterwards, by sale or in any other way, disposed of the property, otherwise than to transfer the bankrupt's estate in the same to him to whom by the bankrupt law it fell, his act had no official character, and needed to make it valid the ratification of the person having title under the law. The court will not in this proceeding hold it valid, but suggests that in order to such validity it would need such a ratification. Such ratification does not appear.

Coming to the first part of the second question: An alleged debtor cannot personally be compelled to pay costs, except of his own making, until he has been adjudged a debtor or costs have been adjudged against him. And until such judgment, of course costs not made at his instance cannot be collected out of his general property as a debt owing from him to the officer. Section 19 of the bankrupt law [of 1867 (14 Stat. 525)] contains an exhaustive enumeration of all claims that may be proved against the bankrupt's estate or any part of it. The enumeration comprises only claims owing by the bankrupt to creditors. No other kind of claim—no charge on specific property unless to secure a personal debt from the bankrupt, is good against the unexcepted articles in court; and it is just to conclude that what could not be enforced against an article if in court, cannot be a charge against it out of court, excepted by the assignee. Excepted articles have at least that measure of exemption that they would have if subject to distribution. Section 20 agrees with section 19; recognizes mortgages or pledges of real or personal estate, and liens, "for the securing of debts owing to the creditor from the bankrupt," as good charges on the bankrupt's estate, and by implication rejects all other charges.

The sheriff here has no lien answering the description of the law. His costs were at plaintiff's instance, and do ñot properly before judgment constitute a debt owing from the bankrupt defendant to the officer (in fact they cannot even after judgment properly be said to), and such costs could not anywhere, it is believed, before judgment, be collected by the officer against the defendant, unless, through the specific property attached. It would, indeed, be unjust to allow the sheriff to satisfy his costs out of the property of the bankrupt defendant in attachment, when those costs were incurred at the request of plaintiff, and when the suit being summarily superseded, the law creates no presumption in favor of the title of plaintiff to costs as against the defendant. Where a suit is thus superseded, the law creates no presumption in favor of either party. It might very well be, that defendant in the attachment suit would, if permitted, have been able to prove himself unindebted. How inequitable, in such a case, would be a diminution of the assets of the bankrupt, by the necessarily considerable expenses of an attachment certainly groundless, possibly malicious! It is to be noted that, under the laws of this territory, if the attaching plaintiff should fail in his attachment suit, the defendant would be entitled to a restoration of all his property attached, without diminution and subject to no lien growing out of the suit.

From these considerations, I am of opinion that the costs that accrued under the attachment prior to the filing of the bankrupt's petition are not a valid lien upon the property in controversy; unless, indeed, some of those costs were incurred at defendant's request, in which case there might be a lien for so much thereof so long as the sheriff retained the property. A release, voluntarily, of the property would be an abandonment of any lien upon it.

And this brings me to the second part of this question: The sheriff parted with the goods at his peril; his lien on them, if any he had, was lost when he let them go. Nothing less than the consent of the person entitled at the time of sale to the property could have made the sale good, and preserved the lien to take effect on the proceeds. The sale, without approval of the person legally entitled, cannot be regarded as good by this court, notwithstanding the purchaser had no actual notice of the dissolution of the attachment, and paid full value for the goods. The commencement of bankruptcy proceedings was notice to all the world of such dissolution. As the sheriff parted with the very goods attached, he could have no lien surviving, unless he sold by consent of the owner. But supposing the sale valid by consent of the proper party, I think that even then no lien could be enforced here. The property sold had been set apart by the assignee as exempt. Goods of that kind might, under readily supposable circumstances, lawfully

be exempted. To the action of the assignee no exception was taken. I assume, therefore, his action in that behalf to be good. One object of the law is to place all the estate of the bankrupt in such a posture and so far in the control of the bankrupt court, that that court can fully and exclusively determine what is to be left to the bankrupt, and freely dispose of and distribute among the creditors the remainder. The estate of the bankrupt might be all personal property, and every article be subject to a lien to secure a debt owing to one or another creditor. By the operation of the law, no such lien, except at the option of its holder, would be extinguished. Every such lien would constitute for the person holding it a special property in the thing covered by the lien, be a part of that person's estate, possibly the most valuable part, and for the law to divest it might be to make one bankrupt in the endeavor to relieve another. The designation of the assignee does not, then, on the one hand, operate to divest any such lien, because that would be inequitable as we have just seen, and the bankrupt law accords the designation no such operation. On the other hand, the assignee is not obliged to designate articles on which are no lien; if he were, the bankrupt might have nothing exempted. Besides, the assignee is not a judicial ouicer to determine the question of lien or no lien. If the assignee should make such a designation of excepted articles as would by reason of the encumbrances on those articles be worthless, or insufficient to fulfil the beneficent design of the law in making exemption, I think the bankrupt could obtain redress by excepting to the determination of the assignee, and that such would be his proper remedy. His appeal from the assignee to the court would bring before the court the whole question of the existence and amount of the liens. But the question not being brought before the court by that mode, the bankrupt is remitted to such rights and remedies in the excepted property as any other man not a bankrupt has in his own property—with this exception, that this bankruptcy court will protect him in the enjoyment of his exempt property against all acts and claims contrary to the bankrupt law. Taking the designation of the assignee to be good, it follows that in contemplation of law the articles excepted never passed to the assignee and are not now and never have been in the possession of the court. The exemption, as well as the assignment, relates back to the filing of the petition. The excepted articles, in contemplation of law, remain the property of the bankrupt subject to all legal encumbrances. A lien on articles so excepted cannot be enforced in the bankruptcy court, because that court has not possession of the articles the lien affects. It has sent them beyond, or rather declined to receive them within, its jurisdiction, and would need to obtain jurisdiction by setting aside the ac-

tion of the assignee before it could enforce the lien. Only such liens as are on property in the possession of the court will be enforced by it. The lien the sheriff claims here cannot, as the case stands, be enforced in this court.

Question the third is answered by referring to sections 38 and 47 of the bankrupt act. Section 38 makes the filing of a petition for adjudication in bankruptcy upon which an order may be issued the commencement of proceedings under the act. Section 47 makes the fifty dollars deposit as security for register's fees merely an act preliminary to the issue of the warrant. An order of adjudication having issued, the time of filing the petition in the supreme court is the date of the dissolution of the attachment.

As to the regularity of the proceedings herein, I am of opinion that the petition filed by the assignee was improperly filed by him, inasmuch as he, having exempted the property attached was not interested in the subject matter of the petition. The special case, though not in all respects formal, is, taken together with the petition, sufficiently intelligible, and presents, by agreement of parties interested, a question properly determinable by this court.

The costs incident to the petition of the assignee, and all costs in this proceeding accrued prior to the filing of the special case, will be paid by the assignee personally; the remainder will abide the further order of the court.

[For prior proceedings in this litigation, see Case No. 11,393.]